IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **FAMILY MEDICINE PHARMACY, LLC,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v.  ) | CIVIL ACTION 15-0563-WS-C |
| ) | |
| **PERFUMANIA HOLDINGS, INC.,** *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

**ORDER**

This matter comes before the Court on Defendants' Corrected Motion to Dismiss Plaintiff's Amended Complaint (doc. 49). The Motion has been extensively briefed and is now ripe for disposition.

**I.     Nature of the Case and Procedural Posture.**

   *A.     Plaintiff's Claims and Allegations.*

This putative class action arises from alleged violations of the Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005 (the "TCPA" or the "Act").[1] Plaintiff, Family Medicine Pharmacy LLC ("Family Medicine"), alleges that it received unsolicited faxes advertising defendants' products on June 30, 2015, and again on September 23, 2015. (Doc. 18, ¶ 16.) Both fax advertisements bore the name "Quality Fragrance Group" and purported to market discounted men's and women's fragrances for commercial sale. (Doc. 18, at

---

[1] In relevant part, the TCPA makes it unlawful for any person "to use any telephone facsimile machine, computer, or other device to send to a telephone facsimile machine, an unsolicited advertisement," 47 U.S.C. § 227(b)(1)(C), unless certain enumerated conditions are satisfied. The statute creates a private right of action to bring suit "based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation" and "to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater." 47 U.S.C. § 227(b)(3). In the event of a willful or knowing violation of the TCPA's prohibition on unsolicited fax advertisements, "the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times" the $500 statutory damages cap, or up to $1,500 per violation. *Id.*

Exhs. A & B.)  The fax header running across the top of each advertisement began with the phrase "From: Perfumania."  (*Id.*)  Family Medicine maintains that these two facsimile transmissions violated the TCPA's prohibition on unsolicited junk faxes, and that defendants' violations were knowing and willful.  On that basis, plaintiff seeks treble statutory damages for each alleged violation, plus a declaratory judgment that these faxes violate the TCPA, a permanent injunction "prohibiting Defendants' practice of sending or causing to be sent unsolicited advertisements," and reasonable attorney's fees and costs.  (*Id.* at 7-8.)

The Amended Complaint names four defendants, to-wit: Perfumania Holdings, Inc. ("PHI"), Quality King Fragrance, Inc. ("Quality King"), Perfumania, Inc. ("Perfumania"), and Quality Fragrance Group ("Quality Fragrance").  Plaintiff's pleading states that Quality Fragrance is a subsidiary of PHI and of Quality King; that Quality Fragrance "serves as an alter ego" of the other defendants; and that Quality Fragrance is "so controlled" by those defendants "as to make it a mere tool of its parents." (Doc. 18, ¶ 5.)  As to each purportedly TCPA-violative fax transmission, the Amended Complaint alleges that "Defendants used a telephone facsimile machine … to send an unsolicited advertisement," and that "[b]oth faxes were sent via a fax telephone number operated by and/or controlled by defendants." (*Id.*, ¶¶ 16-17.)

Family Medicine did not bring this action solely on its own behalf; rather, its pleading is framed as a putative class action complaint.  Family Medicine asserts that defendants have engaged in "the transmission of thousands of unsolicited facsimiles throughout the country … in an intentional and persistent course of conduct, to Plaintiff and the putative class members." (*Id.*, ¶ 15.)  On that basis, plaintiff seeks to represent a class consisting of "[a]ny and all individuals and/or entities who, from 2011 to the present, received one or more unsolicited advertisements via facsimile from Defendants."  (*Id.*, ¶ 19.)[2]

---

[2]     The Court observes that Family Medicine filed at least eight other virtually identical actions against other entities in this District Court last year alone.  In each case, Family Medicine purported to assert class action claims for TCPA violations arising from one or more unauthorized fax transmissions advertising a defendant's products or services.  *See, e.g., Family Medicine Pharmacy, LLC v. Gulf Coast Pharmaceuticals Plus, LLC*, Civil Action No. 15-0615-KD-M (S.D. Ala.), filed December 2, 2015; *Family Medicine Pharmacy, LLC v. TRXADE Group Inc., et al.*, Civil Action No. 15-0590-KD-B (S.D. Ala.), filed November 18, 2015; *Family Medicine Pharmacy, LLC v. Global, LLC*, Civil Action No. 15-0564-C (S.D. Ala.), filed November 3, 2015; *Family Medicine Pharmacy, LLC v. Owen Mumford USA, Inc.*, Civil Action No. 15-0290-CG-N (S.D. Ala.), filed June 2, 2015; *Family Medicine Pharmacy, LLC v.*
(Continued)

### B. Defendants' Offer of Judgment, and Accompanying Tender.

Of critical importance to the pending Motion to Dismiss, defendants transmitted a Rule 68 Offer of Judgment to plaintiff's counsel on or about March 3, 2016. In that Offer of Judgment, defendants denied that the subject faxes violated the TCPA, but nonetheless "offer[ed] to pay Plaintiff $1,503 – that is in excess of the $500 statutory damages pursuant to 47 U.S.C. § 227(b)(3)(B), trebled for willful or knowing violations – for each of the two specific violations set forth in the Complaint, for a total payment to Plaintiff of $3,006." (Doc. 47, ¶ 3 & Exh. A, ¶ 2.a.) Additional components of the Offer of Judgment included the following: (i) an offer to pay plaintiff's "reasonable costs allowable under law" in this matter; (ii) an offer to stipulate to a permanent injunction barring defendants from transmitting unsolicited fax advertisements to plaintiff in the future; (iii) a provision that the offer "shall remain open beyond fourteen days after service of this offer, until such time as it is either accepted by Plaintiff or withdrawn in writing by Defendants;" and (iv) defendants' denial of liability and disclaimer any waiver of objections or defenses. (Doc. 47, Exh. A.)[3]

In transmitting the Offer of Judgment to plaintiff's counsel via Federal Express on March 3, 2016, defendants enclosed a cashier's check in the amount of $3,006.00 made payable to "Family Medicine Pharmacy LLC." (Doc. 47, ¶ 3 & Exh. A, ¶ 2.a.) That same day, defendants' counsel telephonically communicated the sum and substance of the settlement proposal to plaintiff's counsel. (Doc. 56, Exh. C at ¶ 4.) Plaintiff's counsel promptly rejected that offer.

---

*Sheralven Enterprises, Ltd.*, Civil Action No. 15-0194-KD-B (S.D. Ala.), filed April 10, 2015; *Family Medicine Pharmacy, LLC v. Stewart Marketing and Associates, Inc.*, Civil Action No. 15-0193-KD-B (S.D. Ala.), filed April 10, 2015; *Family Medicine Pharmacy, LLC v. Primed Pharmaceuticals, LLC*, Civil Action No. 15-0188-KD-B (S.D. Ala.), filed April 7, 2015; *Family Medicine Pharmacy, LLC v. Advanced RX, Inc.*, Civil Action No. 15-0187-KD-B (S.D. Ala.), filed April 7, 2015. All or nearly all of these other civil actions appear to have resulted in expeditious out-of-court settlements or voluntary dismissals. At any rate, the case at bar appears to be the only one of Family Medicine's recent putative class action filings in this judicial district giving rise to the "picking off" issues that have been so ardently litigated here.

[3] The Offer of Judgment did not provide for attorney's fees because, as defendants correctly point out, that remedy is unavailable under the Act. *See, e.g., Reid v. I.C. Systems, Inc.*, 304 F.R.D. 253, 256 (D. Ariz. 2014) ("The TCPA does not provide for awards of attorneys' fees."); *Klein v. Vision Lab Telecommunications, Inc.*, 399 F. Supp.2d 528, 542 (S.D.N.Y. 2005) ("[t]he TCPA makes no provision for attorney's fees").

(*Id.*)  Nonetheless, defendants' written Offer of Judgment and accompanying check were delivered to plaintiff's counsel's office on March 4, 2016.  (Doc. 47, ¶ 4 & Exh. B; doc. 56, Exh. C at ¶ 7.)  Eleven days later, defendants' counsel received an envelope from plaintiff's counsel's office returning the original $3,006.00 cashier's check, which had not been endorsed, negotiated or cashed.  (Doc. 47, ¶ 6; doc. 56, Exh. C at ¶ 7.)  Defendants' counsel presently holds the $3,006 cashier's check in trust, and stands ready to retransmit such instrument to plaintiff's counsel upon request.  (Doc. 47, ¶ 7.)

At various times, plaintiff's counsel have suggested that defendants' offer was deficient in some way.  Defendants have taken multiple steps to correct any such identified shortcomings.  For example, when plaintiff balked that the settlement amount offered was inadequate because it lacked any allowance for costs or prejudgment interest, defendants' counsel sent plaintiff's counsel a letter dated March 30, 2016, advising that defendants had caused a second cashier's check to be issued, payable to plaintiff in the amount of $1,000.00, to cover all legally allowable costs and interest.  The March 30 letter reflected that defendants' counsel was holding the $1,000 cashier's check in trust, and was prepared to send that check along with the previously returned $3,006 cashier's check to Family Medicine upon request.  (Doc. 47, ¶ 8 & Exh. C.)[4]  Similarly, to rebut plaintiff's objection that the proffered injunctive relief would not encompass all named defendants, defendants issued a clarification that "any references to 'Defendants' in the Offer of Judgment hereby include all of the defendants named in this case."  (Doc. 60, ¶ 3.)

    C.    *The Motion to Dismiss.*

Defendants have now filed a Motion to Dismiss, consisting of two separate prongs.  First, defendants maintain that the Offer of Judgment effectively provides complete relief to Family Medicine, thereby eliminating any bona fide controversy in this action and mandating dismissal of the Amended Complaint for lack of subject matter jurisdiction under Article III.  Second, defendants assert that the Amended Complaint fails to state a claim on which relief can be granted as to defendants PHI and Perfumania because it flunks the *Twombly* / *Iqbal* plausibility test.  In so arguing, defendants rely on their own representations that PHI "has no products" and

---

[4]    That same afternoon, plaintiff's counsel e-mailed a curt response to defendants' counsel reading, in its entirety, "Thanks but no thanks. Offer rejected."  (Doc. 47, ¶ 9 & Exh. D.)  There appears to have been no further negotiation between the parties relative to the rejected offer of judgment as modified by the March 30 letter.

Perfumania "sells products only at the retail level, not at wholesale." (Doc. 49, at 3.) Plaintiff vigorously opposes both grounds animating the Motion to Dismiss.[5]

## II. The Mootness / Jurisdictional Argument Relating to the Offer of Judgment.

### A. The Campbell-Ewald Decision.

Defendants' Motion implicates the hot-button issue of whether and, if so, under what circumstances an unaccepted offer of judgment may moot a class action complaint. Over the years, certain defendants seeking to avoid the onerous effects of Rule 23 litigation have developed the aggressive tactic of "picking off" putative class representatives at the outset of the case, prior to ruling on class certification (or even the filing of class certification motions), via Rule 68 offers of judgment providing them full relief on their individual claims. The idea is to forestall class certification, on the theory that if the named plaintiffs have no active claims, then there can be no class action and the whole case falls apart, with defendants bearing only a tiny fraction of their potential exposure had class certification been granted. Courts and litigants alike have been grappling with this controversial practice for some time.[6]

---

[5] The Motion to Dismiss is not the only noteworthy motion pending in this case; to the contrary, Family Medicine's Preliminary Motion for Class Certification (doc. 19) and Motion to Consider Class Certification upon Completion of Reasonable Discovery (doc. 29) were filed within days after the first iteration of defendants' Motion to Dismiss. The certification issue has been briefed; however, the Court considers the jurisdictional issues raised by the Motion to Dismiss first. After all, if defendants were correct that their Offer of Judgment and tender of settlement funds to Family Medicine moots the entire action, then there would be no case or controversy left and, hence, no jurisdiction allowing the Court to take up plaintiff's motions relating to class certification.

[6] See, e.g., Deposit Guaranty Nat'l Bank, Jackson, Miss. v. Roper, 445 U.S. 326, 339, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980) ("Requiring multiple plaintiffs to bring separate actions, which effectively could be 'picked off' by a defendant's tender of judgment before an affirmative ruling on class certification could be obtained, obviously would frustrate the objectives of class actions; moreover it would invite waste of judicial resources by stimulating successive suits brought by others claiming aggrievement."); Zeidman v. J. Ray McDermott & Co., 651 F.2d 1030, 1050 (5th Cir. 1981) ("By tendering to the named plaintiffs the full amount of their personal claims each time suit is brought as a class action, the defendants can in each successive case moot the named plaintiffs' claims before a decision on certification is reached. A series of individual suits, each brought by a new named plaintiff, could individually be 'picked off' before class certification; as a practical matter, therefore, a decision on class certification could, by tender to successive named plaintiffs, be made … difficult to procure in a case like the one now before us …. The fact remains that in those cases in which it is financially feasible to pay off successive named plaintiffs, the defendants would have the option to preclude a viable
(Continued)

Fortunately, the Supreme Court weighed in on this issue earlier this year in *Campbell-Ewald Co. v. Gomez,* --- U.S. ----, 136 S.Ct. 663, 193 L.Ed.2d 571 (2016).  In most (but not all) respects, *Campbell-Ewald* bears striking similarities to this case.  The plaintiff in *Campbell-Ewald* brought a putative class action alleging that the defendant, an advertising and marketing agency, had violated the TCPA by sending unsolicited text messages targeted at recruiting young adults to the U.S. Navy.  Before the deadline for motions for class certification, the defendant submitted a Rule 68 offer of judgment, whereby it offered to pay the named plaintiff $1,503 per text message he had received personally, plus costs and a stipulated injunction, to settle his individual claims.  When the plaintiff failed to accept the Rule 68 offer, the defendant moved to dismiss the case for lack of subject matter jurisdiction, arguing that the unaccepted offer of judgment mooted the plaintiff's individual claims by providing him complete relief.

The Supreme Court held in *Campbell-Ewald* "that Gomez's complaint was not effaced by Campbell's unaccepted offer to satisfy his individual claim." 136 S.Ct. at 670.  In reaching this result, the Court relied on "basic principles of contract law" to conclude that once the defendant's Rule 68 offer of judgment was rejected, it "had no continuing efficacy." *Id.*  Indeed, "with no settlement offer still operative, the parties remained adverse; both retained the same stake in the litigation they had at the outset." *Id.* at 670-71.  The majority observed that a contrary approach "would place the defendant in the driver's seat" by allowing it to utilize unilateral, unaccepted settlement activity "to avoid a potential adverse decision, one that could expose it to damages a thousand-fold larger than the bid Gomez declined to accept." *Id.* at 672.  Furthermore, the majority reasoned, "a would-be class representative with a live claim of her own must be accorded a fair opportunity to show that certification is warranted." *Id.*  On that

---

class action from ever reaching the certification stage."); *Susman v. Lincoln American Corp.*, 587 F.2d 866, 870 (7th Cir. 1978) ("If a tender made to the individual plaintiff while the motion for certification is pending could prevent the courts from ever reaching the class action issues, that opportunity is at the mercy of a defendant, even in cases where a class action would be most clearly appropriate."); *Jenkins v. Pech,* 301 F.R.D. 401, 406 (D. Neb. 2014) ("allowing class action defendants to 'pick off' plaintiffs with settlement offers prior to obtaining an affirmative ruling on class certification obviously would frustrate the objectives of class actions and would invite waste of judicial resources") (citations and internal quotation marks omitted).

basis, the *Campbell-Ewald* Court concluded, "an unaccepted settlement offer or offer of judgment does not moot a plaintiff's case." *Id.*

That said, *Campbell-Ewald* expressly left unanswered the critical question of whether it would make any difference if the defendant had, in addition to making a Rule 68 offer of judgment, actually tendered settlement funds contemporaneously with that offer. *See id.* at 672 ("We need not, and do not, now decide whether the result would be different if a defendant deposits the full amount of the plaintiff's individual claim in an account payable to the plaintiff, and the court then enters judgment for the plaintiff in that amount."). Not surprisingly, in the wake of *Campbell-Ewald*, savvy class-action defendants seeking to avoid that ruling's adverse effects have tweaked their "picking off" strategy to exploit the back door left ajar by *Campbell-Ewald*, a narrow gray area in the jurisprudence of unaccepted Rule 68 offers. Indeed, that is precisely what PHI, Perfumania, Quality King and Quality Fragrance have done in this case by sending Family Medicine a cashier's check for $3,006 contemporaneously with their offer of judgment. Defendants' Motion to Dismiss is rooted in the premise that the act of tendering complete relief (cashier's checks, stipulated injunction, etc.) distinguishes this case from *Campbell-Ewald* and moots Family Medicine's personal and class claims, notwithstanding Family Medicine's express refusal of the offer and immediate return of the cashier's check.

The legal question the Supreme Court left open in *Campbell-Ewald* is thus squarely presented for adjudication here. We know that, as a general proposition, an unaccepted offer of judgment does not moot a class action plaintiff's case. The pertinent question, however, is this: Does the result change if the defendant tenders the settlement funds to the plaintiff upon making the offer of judgment? Although *Campbell-Ewald* is of recent vintage (having been decided in late January 2016), this analytical territory has already been mined extensively in that ruling's aftermath. Indeed, over the last five months, non-binding decisions from throughout the country have surfaced to address this very wrinkle, often in the context of TCPA claims akin to Family Medicine's. Thoughtful, well-reasoned decisions have emerged on both sides of the issue; however, there appears to be an emerging consensus against a finding of mootness.[7]

---

[7] Several courts, typically keying on language from *Campbell-Ewald* dissents and a narrow view of Article III's "case or controversy" requirement, have determined that the tender of full individual relief, even if rejected, extinguishes a plaintiff's live claim. *See, e.g., Gray v. Kern*, 143 F. Supp.3d 363, 367 (D. Md. 2016) ("the Court finds that a measure which makes (Continued)

B. *Defendants' Offer and Tender Do Not Moot the Case.*

After careful review of the competing strands of authority, as well as the parties' arguments in their briefs, the Court finds most persuasive the analysis set forth in *Ung v.*

---

absolutely clear that the defendant will pay the complete relief the plaintiff can recover and that the plaintiff will be able to receive that relief will moot the issue in controversy"); *Leyse v. Lifetime Entertainment Services, LLC*, --- F. Supp.3d ----, 2016 WL 1253607, *2 (S.D.N.Y. Mar. 17, 2016) ("As here, a defendant's deposit of a full settlement with the court, and consent to entry of judgment against it, will eliminate the live controversy before a court."). However, other courts have declined to dismiss as moot a named plaintiff's claims based on a rejected tender of complete individual relief, where the plaintiff has not yet had a fair opportunity to pursue class certification. *See, e.g., Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1147 (9th Cir. 2016) ("when a defendant consents to judgment affording complete relief on a named plaintiff's individual claims before certification, but fails to offer complete relief on the plaintiff's class claims, a court should not enter judgment on the individual claims, over the plaintiff's objection, before the plaintiff has had a fair opportunity to move for class certification"); *Fauley v. Royal Canin U.S.A., Inc.*, 143 F. Supp.3d 763, 765 (N.D. Ill. 2016) (opining that "it is inappropriate to enter judgment on a named plaintiff's individual claims, over the plaintiff's objection, before the plaintiff has had a fair opportunity to move for class certification") (citations and internal quotation marks omitted); *Radha Giesmann, MD, P.C. v. American Homepatient, Inc.*, 2016 WL 3407815, *3 (E.D. Mo. June 16, 2016) ("Here, the Court has not yet held a hearing or ruled on the Motion for Class Certification. Thus, the Court finds it inappropriate to allow Defendant to tender payment to the class representative on his individual claims, over Plaintiff's objection, to presumably incapacitate the class action before Plaintiff has had a fair opportunity to show that certification is warranted."); *Brady v. Basic Research, L.L.C.*, 2016 WL 1735856, *1 (E.D.N.Y. May 2, 2016) ("[e]ntering judgment against Defendants over Plaintiffs' objections before Plaintiffs have had the opportunity to file a class certification motion as Defendants request would ignore the Supreme Court's holding" in *Campbell-Ewald*, even with a tender); *APB Associates, Inc. v. Bronco's Saloon, Inc.*, --- F. Supp.3d ----, 2016 WL 1394646, *7 n.4 (E.D. Mich. Apr. 7, 2016) ("This Court does not read *Gomez* as supporting Defendants' argument that Plaintiff's claim was mooted because Defendants tendered a check to plaintiff in the amount of the judgment."); *Bais Yaakov of Spring Valley v. Graduation Source, LLC*, --- F. Supp.3d ----, 2016 WL 872914, *1 (S.D.N.Y. Mar. 7, 2016) ("Although Defendants sought to avail themselves of the hypothetical proposed in *Campbell-Ewald* by depositing the full amount of statutory damages into the Court's Finance Unit …, Plaintiff's individual claims remain live – this Court has not entered judgment in favor of Plaintiff and has not, by express, written order released the funds to Plaintiff."). Still other courts have taken a hybrid approach, mooting individual claims but allowing class claims to proceed. *See, e.g., South Orange Chiropractic Center, LLC v. Cayan LLC*, 2016 WL 1441791, *5 & 7 (D. Mass. Apr. 12, 2016) ("this named plaintiff no longer has the requisite 'live claim' because Defendant has offered to deposit a check with the court, to satisfy all of Plaintiff's individual claims (and more), and to have the district court enter judgment in Plaintiff's favor," but "even though Plaintiff's individuals claims have become moot, the class action may proceed as a case or controversy under Article III").

-8-

*Universal Acceptance Corp.*, --- F. Supp.3d ----, 2016 WL 3136858 (D. Minn. June 3, 2016). The *Ung* court held that a defendant's tender of complete relief for a plaintiff's individual claims in a putative class action alleging TCPA violations moots neither the named plaintiff's claims nor the class claims. As to the individual claims, *Ung* observed that with the plaintiff's rejection of the tender, "the parties remain adverse and, hence, retain the same stake in the litigation they had at the outset," meaning that the plaintiff "would end up empty-handed" if the court were to deem those claims moot merely because the defendant tendered a now-rejected check to the plaintiff. *Id.* at *5 (citations and internal marks omitted). In pondering the impact of *Campbell-Ewald*, the *Ung* court mused that "there is no principled difference between a plaintiff rejecting a *tender* of payment and an *offer* of payment," because "in either case, the plaintiff ends up in the exact same place he occupied before his rejection." *Id.* With respect to class claims, the *Ung* opinion stressed that because the plaintiff had brought his case as a putative class action, he had assumed class responsibilities that he must be given a reasonable opportunity to fulfill. *Id.* at *6 ("a class-action plaintiff must be afforded a reasonable opportunity to show class certification is warranted, even if his or her individual claim has been rendered moot," or else the class action device does not work). Otherwise, the court in *Ung* explained, there would be "a 'race to pay off' named plaintiffs very early in the litigation, before they file motions for class certification." *Id.* (citation and internal quotation marks omitted). *Ung* pointed out that equating tender of a rejected settlement offer with mootness "would place control of a putative class action in the defendant's hands," against which the *Campbell-Ewald* majority had expressly warned. *Id.* at *7. Ultimately, then, *Ung* concluded that "[t]he law does not countenance the use of individual offers to thwart class litigation, because the class-action device is designed to allow similarly situated plaintiffs to aggregate smaller claims, promoting judicial efficiency." *Id.* (citations and internal quotation marks omitted).

The Court adopts the reasoning and result of the District of Minnesota in *Ung v. Universal Acceptance Corp.* In the undersigned's view, the *Ung* approach gives proper force and effect to the *Campbell-Ewald* directive that "a would-be class representative with a live claim of her own **must be accorded a fair opportunity to show that certification is warranted**." *Campbell-Ewald*, 136 S.Ct. at 672 (emphasis added). No one disputes that Family Medicine had a live claim of its own when it commenced this putative class action against defendants for violating the TCPA. But defendants' "picking off" strategy would extinguish Family Medicine's

individual live claim without first allowing that named plaintiff "a fair opportunity to show that certification is warranted," thus violating the principles underlying *Campbell-Ewald*. What's more, the *Ung* decision appropriately applies the *Campbell-Ewald* majority's words of caution against "plac[ing] the defendant in the driver's seat" in class actions by means of "gambit" designed "to avoid a potential adverse decision, one that could expose it to damages a thousand-fold larger" than the tendered amount to settle the named plaintiff's individual claims. 136 S.Ct. at 672. If defendants could derail a class action at its inception by picking off named plaintiffs via Rule 68 offers of judgment and tender of settlement checks for relatively trifling sums, before a Rule 23 motion could be filed or decided, the resulting game of whac-a-mole would empower sharp-eyed defendants to prevent a class action from ever getting off the ground. Each time a new named plaintiff appeared, the defendant could rush in with a Rule 68 offer and a tender of funds to wipe out the individual claims, erase the named plaintiff, and prevent class certification from ever being litigated. Such a result would effectively write Rule 23 out of the Federal Rules of Civil Procedure, eviscerate consumer class actions, grant absolute power to defendants to destroy class actions in their infancy via a foolproof, inexpensive "picking off" strategy that plaintiffs would be powerless to prevent, and do violence to the guiding principle that the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Rule 1, Fed.R.Civ.P.

In so concluding, the Court recognizes that defendants' mootness argument is centered on Article III's case-or-controversy limitations on federal jurisdiction. *See, e.g., Susan B. Anthony List v. Driehaus*, --- U.S. ----, 134 S.Ct. 2334, 2341, 189 L.Ed.2d 246 (2014) ("Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'"). "A case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." *Hunt v. Aimco Properties, L.P.*, 814 F.3d 1213, 1220 (11th Cir. 2016) (citation omitted). Defendants' position is that the tender of complete individual relief to Family Medicine eliminates any live controversy between the parties, rendering the case moot and destroying federal jurisdiction pursuant to Article III. Of course, the Federal Rules of Civil

Procedure must yield to constitutional limitations on jurisdiction.[8]  But defendants' argument overlooks "the flexible character of the Art. III mootness doctrine," and its "uncertain and shifting contours."  *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 400-01, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980) (citation omitted).  The Supreme Court has ruled that, where the named plaintiffs in a putative class action rejected tender of a settlement and the case was involuntarily dismissed, "[n]either the rejected tender nor the dismissal of the action over plaintiffs' objections mooted the plaintiffs' claim on the merits so long as they retained an economic interest in class certification."  *Deposit Guaranty Nat'l Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 332-33, 100 S.Ct. 1166, 63 L.Ed.2d 4217 (1980).

Moreover, in a TCPA case in which the defendant used Rule 68 offers of judgment to attempt to moot a putative class action, the Eleventh Circuit has held that even if such offers were successful in extinguishing the named plaintiffs' claims, "the class claims remain live, and the named plaintiffs retain the ability to pursue them."  *Stein v. Buccaneers Ltd. Partnership*, 772 F.3d 698, 704 (11th Cir. 2014).  The *Stein* court reasoned as follows:

> "[I]t is plain that this case still presents a live controversy.  The plaintiffs say BLP violated the Telephone Consumer Protection Act and that all class members are entitled to money damages; BLP denies it.  In indistinguishable circumstances, *Zeidman* [*v. J. Ray McDeromott & Co.*, 651 F.2d 1030 (5th Cir. 1981)] held the dispute was still live and said: 'The case before us, therefore, rests not on whether there exists a live controversy, but on whether the district court has before it some plaintiff with a personal stake in that controversy.'  *Id.* at 1042.  The same is true here."

*Stein*, 772 F.3d at 704-05.  Thus, binding precedent in this Circuit holds that even if a defendant successfully "picks off" a named plaintiff's individual claims via Rule 68 offer of judgment before adjudication of class certification issues, there remains a live controversy and, hence, no Article III jurisdictional problem.[9]  Defendants' jurisdictional argument is soundly defeated by

---

[8] *See, e.g., Roper*, 445 U.S. at 332 ("[T]he right of a litigant to employ Rule 23 is a procedural right only, ancillary to the litigation of substantive claims.  Should these substantive claims become moot in the Art. III sense, by settlement of all personal claims for example, the court retains no jurisdiction over the controversy of the individual plaintiffs.").

[9] Defendants insist that *Stein* is distinguishable because it "only addresses the effect of an unaccepted and expired Rule 68 offer in which the defendant did not make any actual payments in redress of plaintiffs' claims."  (Doc. 46, at 19.)  But this argument misapprehends the critical portion of *Stein*.  The *Stein* mootness analysis considered both the Rule 68 offers'
(Continued)

*Stein*, and "[t]he Court perceives no tension between Rule 23 and Article III under the circumstances here." *Ung*, 2016 WL 3136858, at *7.

For all of the foregoing reasons, defendants' Motion to Dismiss is **denied** insofar as it is predicated on the theory that this action has been rendered moot by defendants' Rule 68 offer of judgment and accompanying tender of full relief on Family Medicine's individual claims, which tender was promptly and emphatically rejected. There remains a live controversy here, and Family Medicine will be given a fair and reasonable opportunity to show that class certification is warranted, without being railroaded into an involuntary settlement as part of a defense "picking off" tactic designed to bury class certification issues joined in this litigation before they can ever be heard.

---

effect on the named plaintiffs' claims <u>and</u> those offers' effect on the class claims. The first part of that discussion (in which the Eleventh Circuit concluded that the Rule 68 offers of judgment did not moot the plaintiffs' individual claims) may indeed be distinguished from our case because the *Stein* defendants did not tender funds to settle the named plaintiffs' individual claims, whereas our defendants did. But the second part of the *Stein* mootness analysis – in which the Eleventh Circuit stated as "an alternate basis for this holding" of non-mootness that "[e]ven if the individual claims are somehow deemed moot the class claims remain live, and the named plaintiffs retain the ability to pursue them," 772 F.3d at 704 – cannot be distinguished in this manner. The offer-versus-tender dichotomy urged by defendants would not affect the second prong of the *Stein* mootness analysis at all. In that portion of *Stein*, the Eleventh Circuit opined that "the clear law of the circuit" provides that a live controversy remains even if the named plaintiffs' claims are moot. To the extent that defendants would point to bits of dicta in the *Campbell-Ewald* majority or dissenting opinions, or particular justices' isolated, off-the-cuff remarks during oral argument, as a means of neutralizing or rebutting *Stein*'s unambiguous ramifications for this case, such arguments must fail. Whatever tension might exist between *Stein* and *Campbell-Ewald* on this point "is insufficient to change the clear law of the circuit" because "[a] Supreme Court dictum in a different setting rarely suffices to overturn a clear circuit holding on the precise question at issue." *Stein*, 772 F.3d at 709. That is what we have here. In *Stein*, the Eleventh Circuit unequivocally held, in reliance on circuit precedent, that even if named plaintiffs' individual claims in a putative class action could be mooted via the Rule 68 mechanism, "the class claims remain live, and the named plaintiffs retain the ability to pursue them." *Id.* at 704. That defendants might stitch together fragments of non-binding language to the contrary from particular justices' remarks, concurring and dissenting opinions, and dicta in *Campbell-Ewald* to tell a different story in no way overturns or undermines the clear circuit holding in *Stein*, reinforcing what has been the law in this Circuit dating back 35 years to *Zeidman*.

**III.    The *Twombly* Issue as to Perfumania Holdings, Inc. and Perfumania, Inc.**

As a separate, independent ground for their Motion to Dismiss, defendants assert that the Amended Complaint fails to state plausible claims for relief under the TCPA against defendants PHI and Perfumania.

To withstand Rule 12(b)(6) scrutiny and satisfy Rule 8(a), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," so as to "nudge[] [its] claims across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citation omitted).  "This necessarily requires that a plaintiff include factual allegations for each essential element of his or her claim." *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1254 (11th Cir. 2012).  Thus, minimum pleading standards "require[] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  As the Eleventh Circuit has explained, *Twombly* / *Iqbal* principles require that a complaint's allegations be "enough to raise a right to relief above the speculative level." *Speaker v. U.S. Dep't of Health and Human Services Centers for Disease Control and Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010) (citations omitted).  "To survive a Rule 12(b)(6) motion to dismiss, the complaint does not need detailed factual allegations … but must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010) (citations and internal quotation marks omitted).

The focal point of the plausibility analysis must be the pleading itself.  Here, well-pleaded factual allegations in the Amended Complaint include the following: (i) defendant Quality Fragrance is a subsidiary of PHI (doc. 18, ¶ 5); (ii) Quality Fragrance "serves as an alter ago" of PHI and Perfumania (*id.*); (iii) Quality Fragrance "is so controlled by Perfumania [and PHI] … as to make it a mere tool" of those entities (*id.*); (iv) "Defendants' primary activities involve advertising to persons and entities in an effort to generate sales leads for their cosmetic and fragrance products" (*Id.*, ¶ 6); (v) "Defendants utilize 'fax blasting' activities to generate sales leads for their products" (*id.*, ¶ 14); (vi) on certain specified dates, "Defendants used a telephone facsimile machine … to send an unsolicited advertisement … advertising the

commercial availability of Defendants' products" (*Id.*, ¶ 16); and (vii) "[b]oth faxes were sent via a fax telephone number operated by and/or controlled by defendants" (*id.*, ¶ 17). Although the faxes themselves purport to advertise the products of "Quality Fragrance Group," both of the allegedly offending fax transmissions, which are appended to the Complaint as exhibits, bear a fax header stating "From: Perfumania." (*Id.*, Exhs. A & B.)

In advancing their *Twombly* / *Iqbal* argument, defendants reason that "it is not plausible to allege that PHI sent a fax to advertise its products when it has no products." (Doc. 46, at 3.) They further insist that "Perfumania is a retail chain with over 320 stores, and that it sells products only at the retail level." (*Id.*) Thus, defendants maintain that Family Medicine's claims against defendant PHI and Perfumania flunk the requisite plausibility analysis because "neither PHI nor Perfumania promote goods for wholesale distribution." (*Id.*) To bolster these factual assertions, defendants cite to various exhibits outside the pleadings, including declarations and excerpts of Form 10-K statements, of which they urge the Court to take judicial notice. (*See* doc. 47, ¶ 11 & Exh. E; doc. 61.) In short, defendants' position is that PHI and Perfumania cannot be liable under the TCPA for faxes advertising wholesale distribution of products, because PHI has no products and Perfumania has no wholesale distribution.

Defendants' argument overlooks the applicable legal standard. For purposes of this Rule 12(b)(6) analysis, the Court accepts as true all well-pleaded factual allegations of the Amended Complaint, and draws all reasonable inferences in Family Medicine's favor. *See, e.g., Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) (in reviewing Rule 12(b)(6) motion, court must "accept[] the facts alleged in the complaint as true," "draw[] all reasonable inferences in the plaintiff's favor," and "limit[] our review to the four corners of the complaint").[10] Those well-pleaded factual allegations reflect that Quality Fragrance (the entity whose products were

---

[10] Notwithstanding this deference to plaintiff's pleading, it is also true that "[l]egal conclusions without adequate factual support are entitled to no assumption of truth." *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011); *see also Chandler v. Secretary of Florida Dep't of Transp.*, 695 F.3d 1194, 1199 (11th Cir. 2012) ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions") (citation omitted); *Randall*, 610 F.3d at 709-10 ("A district court considering a motion to dismiss shall begin by identifying conclusory allegations that are not entitled to an assumption of truth – legal conclusions must be supported by factual allegations. The district court should assume, on a case-by-case basis, that well pleaded factual allegations are true, and then determine whether they plausibly give rise to an entitlement to relief.").

ostensibly being advertised in the purportedly violative faxes) is so linked to and controlled by PHI and Perfumania as to be "a mere tool" of those entities; that the faxes themselves were "From: Perfumania;" that defendants' primary activities were to "generate sales leads for their cosmetic and fragrance products;" and that defendants sent the faxes to "advertis[e] the commercial availability of Defendants' products." Defendants may well vigorously dispute those factual allegations.[11] But the Rule 12(b)(6) stage is not the proper time to argue that the plaintiff's version of the facts is incorrect, or to introduce other exhibits and testimony (as defendants have) to support conflicting factual narratives. The Court accepts the facts alleged in the Amended Complaint as true for purposes of adjudicating the Motion to Dismiss. Those factual allegations are sufficient to state plausible claims against PHI and Perfumania for violations of the TCPA, inasmuch as they plausibly show that the faxes were sent on those defendants' behalf.[12]

---

[11] For example, defendants argue and offer evidence that "PHI does not sell any products." (Doc. 46, at 11.) But the Amended Complaint alleges otherwise. The same is true of defendants' position concerning Perfumania. The ensuing tit-for-tat conflicting evidentiary submissions offered by the parties underscore the importance and utility of the rule requiring factual allegations in a complaint to be accepted as true on a motion to dismiss. This is not summary judgment. No discovery has taken place. Rather than having this Court draw half-baked factual conclusions from incomplete (and potentially distorted or inaccurate) factual records, the rule mandates that Family Medicine's well-pleaded factual allegations be subjected to the crucible of discovery, rather than being summarily rejected on Rule 12(b)(6) review as defendants would have this Court do. Stated differently, applicable procedural rules require that the well-pleaded facts alleged in Family Medicine's pleading be accepted for Rule 12(b)(6) purposes even when defendants offer contrary exhibits.

[12] In so concluding, the Court is cognizant of the Eleventh Circuit's deference to the Federal Communications Commission's construction of the TCPA's "to send" requirement as establishing "direct liability for an entity on whose behalf goods or services were promoted by unsolicited fax advertisement," such that "the sender [is] the party 'on whose behalf facsimiles are transmitted.'" *Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1256-57 (11th Cir. 2015). However, the Amended Complaint contains sufficient factual allegations that PHI and Perfumania were entities on whose behalf the purportedly offending fax transmissions promoted products. After all, the pleading alleges that the products at issue were those of defendants, that defendants' primary activities involved advertising to generate sales leads for those products, that defendants used fax-blasting activities to generate sales leads for their products, that PHI and Perfumania control Quality Fragrance as their "mere tool," that the fax transmissions purported to market Quality Fragrance products, that the fax header listed "Perfumania" as the sender, and so on. Based on these and other factual allegations in the Amended Complaint, Family Medicine has plausibly alleged sufficient facts to state a claim that (Continued)

**IV.     Conclusion.**

For all of the foregoing reasons, Defendants' Corrected Motion to Dismiss (doc. 49) is **denied**.  Defendants are **ordered** to answer the Amended Class Action Complaint by no later than **July 19, 2016**.

DONE and ORDERED this 5th day of July, 2016.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

PHI and Perfumania would qualify as TCPA "senders," inasmuch as those facts (if proven) would support a plausible inference that the faxes in question were transmitted on those defendants' behalf to promote goods or services.