IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| FAMILY MEDICINE PHARMACY, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION 15-0563-WS-C |
| ) | |
| PERFUMANIA HOLDINGS, *et al.*, ) | |
| ) | |
| Defendants. ) | |

# ORDER

This matter comes before the Court on Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Class (doc. 83). The Motion has been briefed and is now ripe for disposition.

**I.     Background.**

Plaintiff, Family Medicine Pharmacy, LLC, brought this putative class action against defendants, Perfumania Holdings, Inc., Perfumania, Inc., Quality King Fragrance, Inc., and Quality Fragrance Group, alleging violations of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227, as amended by the Junk Fax Prevention Act of 2005 (the "TCPA"). In particular, Family Medicine maintained that it had received unsolicited "junk faxes" advertising defendants' products on a pair of occasions in June 2015 and September 2015, in violation of the TCPA's prohibition on transmission of unsolicited advertisements by facsimile machine, computer, or other device. *See* 47 U.S.C. § 227(b)(1)(C). By its terms, the TCPA provides for a private right of action, and authorizes recovery of the greater of actual damages or statutory damages of $500, or up to treble that amount for willful or knowing violations. *See* 47 U.S.C. § 227(b)(3).

This action was litigated vigorously for nearly a year, with substantial motion practice and discovery. On October 5, 2016, however, the parties participated in a mediation that yielded settlement of this dispute in its entirety. The agreement is memorialized in a 42-page Settlement Agreement and Release executed by the parties and their counsel on November 30, 2016. (*See*

doc. 84, Exh. 1.)  In summary, the settlement terms consist of the following: (i) defendants pay the sum of $463,349.50 in cash, to be distributed on a *pro rata* basis to class members making claims, such distributions not to exceed $333.33 per compensable fax transmission; (ii) each class member submitting a valid claim receives a $10.00 gift card valid for purchase of designated fragrances or perfume brands at Perfumania, Inc. retail stores; (iii) defendants pay the first $10,000 of notice and claims administration costs, with the remainder (forecast to be roughly $15,000) to be deducted from the settlement proceeds; and (iv) plaintiff's attorney's fees and litigation costs of up to one-third of the total settlement amount will be paid from the settlement proceeds.  Plaintiff, with the acquiescence of defendants, now petitions the Court for preliminary approval of the settlement agreement and conditional certification of a settlement class pursuant to Rule 23 of the Federal Rules of Civil Procedure.

## II.    Motion for Conditional Certification of Settlement Class.

Plaintiff seeks conditional certification of a settlement class (the "Settlement Class") whose parameters would be defined as follows:

> "All Persons with fax numbers who, between January 1, 2011 through and including the date of entry of the Preliminary Approval Order, received any successful transmission of an unsolicited fax from Defendants advertising Defendants' products and/or services."

(Doc. 84, Exh. 1, § 8.3.)  Based on defendants' records of fax transmissions during the relevant time period, the parties estimate that approximately 6,500 persons and entities will fall within the definitional boundaries of this Settlement Class definition.

"A class action may be maintained only when it satisfies all the requirements of Fed.R.Civ.P. 23(a) and at least one of the alternative requirements of Rule 23(b)." *Rutstein v. Avis Rent-A-Car Systems, Inc.*, 211 F.3d 1228, 1233 (11th Cir. 2000) (citation omitted).  Here, Family Medicine seeks certification of a settlement class under Rules 23(a) and 23(b)(3).  Before reaching the Rule 23 criteria, the Court must determine whether the proposed class is "adequately defined and clearly ascertainable." *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012) (citations omitted).[1]  "In order to establish ascertainability, the plaintiff

---

[1]    Actually, the very first question to examine in the class certification context is whether "at least one named class representative has Article III standing to raise each class subclaim." *Murray v. Auslander*, 244 F.3d 807, 810 (11th Cir. 2001) (citations omitted).  It is a "well-settled rule" that "any analysis of class certification must begin with the issue of standing." (Continued)

must propose an administratively feasible method by which class members can be identified." *Karhu v. Vital Pharmaceuticals, Inc.*, 621 Fed.Appx. 945, 947 (11th Cir. June 9, 2015). "Administrative feasibility means that identifying class members is a manageable process that does not require much, if any, individual inquiry." *Bussey v. Macon County Greyhound Park, Inc.*, 562 Fed.Appx. 782, 787 (11th Cir. Apr. 2, 2014) (citations and internal quotation marks omitted). Family Medicine has met this requirement by proposing a manageable, logistically straightforward means of identifying class members. In particular, Family Medicine explains that defendants sent the subject faxes via computer; that defendants have maintained computerized records identifying the recipients by name and fax number; that defendants have also maintained marketing spreadsheets containing additional information concerning class members; and that plaintiff and the settlement administrator thus have access to a list (the "Notice List") containing the names, addresses, fax numbers, and frequency and dates of faxes transmitted for each potential class number. As such, the Notice List provides a readily available, administratively feasible means of identifying and locating all class members via a manageable process that will require little, if any, individual inquiry. The ascertainability prerequisite for class certification is thus satisfied here.

Having determined that Family Medicine's proposed settlement class is adequately defined and clearly ascertainable, the Court moves on to consider the specifications of Rule

---

*Id.* (citation omitted). "To establish Article III standing, an injury must be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, --- U.S. ----, 133 S.Ct. 1138, 1147, 185 L.Ed.2d 264 (2013) (citations and internal quotation marks omitted). Here, it cannot seriously be questioned that Family Medicine, as the recipient of two unsolicited junk faxes from defendants, possesses the requisite Article III standing to raise claims under the TCPA. *See Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1251 (11th Cir. 2015) (in TCPA junk fax case, "[w]e find that Palm Beach Golf has Article III standing sufficient to satisfy the injury requirement because it has suffered a concrete and personalized injury in the form of the occupation of its fax machine for the period of time required for the electronic transmission of the data (which, in this case was one minute)."). In *Palm Beach Golf*, the Eleventh Circuit reasoned that the plaintiff had satisfied the "injury" requirement for Article III standing because "it is indisputable that Palm Beach Golf's fax machine was occupied during B2B's successful transmission of the unsolicited fax advertisement." *Id.* at 1253. The same is true with respect to Family Medicine's receipt of Perfumania / Quality Fragrance faxes. Thus, Family Medicine has Article III standing to pursue the class claims.

23(a).  *See Little*, 691 F.3d at 1304 ("If the plaintiff's proposed class is adequately defined and clearly ascertainable, the plaintiff must then establish the four requirements listed in Federal Rule of Civil Procedure 23(a).").  The Rule 23(a) requirements for certification of any class action are that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Rule 23(a), Fed.R.Civ.P.; *see also Calderone v. Scott*, 838 F.3d 1101, 1104 (11th Cir. 2016) ("Rule 23(a) requires every putative class to satisfy the prerequisites of numerosity, commonality, typicality, and adequacy of representation.").

With respect to the Rule 23(a)(1) "numerosity" requirement, the parties have identified approximately 6,500 class members within the scope of the proposed class definition.  That volume of class members is plainly "so numerous that joinder of all members is impracticable," so as to satisfy Rule 23(a)(1).

For purposes of the "commonality" requirement of Rule 23(a)(2), "even a single common question will do."  *Carriuolo v. General Motors Co.*, 823 F.3d 977, 984 (11th Cir. 2016) (citation omitted).  "That common contention … must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.* (citations omitted).  Family Medicine identifies as common issues of fact or law the following, among others: whether defendants are subject to the TCPA, whether defendants' facsimile transmissions violated the TCPA, and whether class members are entitled to statutory damages.  Under the circumstances, the Court agrees with plaintiff that Rule 23(a)(2) commonality has been adequately established.

The Rule 23(a)(3) "typicality" requirement turns on whether "the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory."  *Williams v. Mohawk Industries, Inc.*, 568 F.3d 1350, 1357 (11th Cir. 2009) (citation omitted).  Here, Family Medicine and all proposed class members are alleged to have been harmed in the same manner (*i.e.*, receipt of unsolicited junk faxes occupying their fax machines for a brief period of time) by the same course of conduct by the same defendants in the same time period, with the same legal remedy (*i.e.*, statutory damages for violation of the TCPA).  Family Medicine's claims appear unremarkable and facially indistinguishable from

those of other putative class members; therefore, the "typicality" requirement of Rule 23(a)(3) is satisfied.

The last of the Rule 23(a) factors is found at Rule 23(a)(4), which imposes an "adequacy of representation" requirement. "This adequacy of representation analysis encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003) (citation and internal quotation marks omitted). The record reveals no perceptible conflicts of interest between Family Medicine and class members; to the contrary, their economic interests and litigation objectives appear fully aligned. Moreover, plaintiff has shown that Family Medicine will adequately prosecute this action. Indeed, Family Medicine has established a proven track record in this case of prosecuting its claims vigorously and zealously, and there is no reason to believe it will not continue to do so on behalf of the class following conditional certification. The same holds true for Family Medicine's counsel of record, who are well qualified to represent classwide interests here. *See id.* (observing that named representatives must "vigorously prosecute the interests of the class through qualified counsel" in order to satisfy Rule 23(a)(4)). On this showing, the Court readily concludes that Family Medicine will fairly and adequately protect the interests of the class, as required by Rule 23(a)(4). Thus, plaintiff has met its burden of establishing all four Rule 23(a) prerequisites. For class certification to be appropriate, however, Family Medicine must also satisfy one prong of Rule 23(b). Plaintiff has designated this case as fitting within the parameters of Rule 23(b)(3), so the analysis shifts to that subsection.

In order to satisfy Rule 23(b)(3), the plaintiff must show (in addition to the Rule 23(a) factors discussed previously) "(1) that common questions of law or fact predominate over questions affecting only individual class members ('predominance'); and (2) that a class action is superior to other available methods for adjudicating the controversy ('superiority')." *Calderone*, 838 F.3d at 1105 (citations omitted); *see also Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009) (same). As to the Rule 23(b)(3) predominance requirement, the test is whether common issues "have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Carriuolo*, 823 F.3d at 985 (citation omitted). The predominance requirement is not met if, "as a practical matter, the

resolution of an overarching common issue breaks down into an unmanageable variety of individual legal and factual issues." *Id.* Here, the Court finds that common issues of law and fact predominate. Common fact questions include whether defendants sent the subject faxes and whether those faxes were unsolicited. Common legal questions include whether defendants are subject to the TCPA and whether the fax transmissions in question violate the TCPA (which subsumes such questions as whether they include the requisite opt-out notice). Resolution of those common questions will directly impact every class member's effort to establish liability and a right to relief. Thus, Rule 23(b)(3) predominance is properly found here.[2] Moreover, class treatment is superior to other available means of adjudicating the controversy given the sheer volume of potential class members, the identity or near-identity of factual and legal issues implicated by their claims, and the administrative simplicity of identifying and notifying potential class members using defendants' computerized records and marketing spreadsheets. Plaintiff has thus met its burden of showing that conditional certification is appropriate pursuant to Rules 23(a) and 23(b)(3)

For all of the foregoing reasons, and for purposes of settlement only, the Court preliminarily **grants** Plaintiff's Motion for Certification of Settlement Class. The TCPA claims presented in Counts I, II and III of the Amended Class Action Complaint are **conditionally**

---

[2] That said, the Court recognizes that there are scenarios in which resolution of the common questions could break down into a fragmentary, plaintiff-specific morass. For example, if defendants were pursuing the statutory exemption set forth at 47 U.S.C. § 227(b)(1)(C)(i)-(iii), which relates to consent by the recipient, it requires no leap of logic to envision the litigation bogging down in individual-specific queries such as whether defendants had "an established business relationship with the recipient" and whether the recipient engaged in "voluntary communication" to supply defendants with its fax number, all on a class-member-by-class-member basis. Those types of concerns could render the Rule 23(b)(3) predominance analysis problematic, at best. Here, however, the parties represent that, as part of their proposed settlement, "Defendants are agreeing to take class members at their word when they submit their claims that they did not provide consent. This removes consent as a contested issue …." (Doc. 84, at 21.) The point is that, while the Court finds the Rule 23(b)(3) requirements to be satisfied in the specific procedural posture of this litigation – with its proposed settlement agreement, the request for conditional certification to implement and effectuate the settlement, and the absence of any consent defense – the undersigned expresses no opinion as to the viability of Rule 23(b)(3) certification in a case like this in the absence of a settlement removing the individual-specific consent issue from the field of play.

**certified** as a class action that Family Medicine (as class representative) may pursue on behalf of the following settlement class:

> "All Persons with fax numbers who, between January 1, 2011 through and including the date of entry of the Preliminary Approval Order, received any successful transmission of an unsolicited fax from Defendants advertising Defendants' products and/or services."

Named plaintiff, Family Medicine Pharmacy, LLC, is preliminarily **appointed** as the representative of the settlement class.

A remaining aspect of the conditional certification portion of plaintiff's Motion is plaintiff's request for appointment of class counsel. *See* Rule 23(c)(1)(B), Fed.R.Civ.P. ("An order that certifies a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g)."). Based on its determinations that they are qualified, capable and willing to provide competent, zealous, and conflict-free representation to the class, the Court provisionally **appoints** Diandra S. Debrosse Zimmermann and James H. McFerrin as class counsel to represent the settlement class, pursuant to Rule 23(g)(1)-(2), Fed.R.Civ.P.[3]

### III. Motion for Preliminary Approval of Class Action Settlement.

In its Motion, Family Medicine also seeks preliminary approval of the parties' proposed classwide settlement. Of course, any such settlement requires judicial approval. *See* Rule 23(e), Fed.R.Civ.P. ("The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval."). "Preliminary approval of a proposed class action settlement does not involve a determination of the merits of the proposed settlement or affect the substantive rights of any class member." *Figueroa v. Sharper Image Corp.*, 517 F. Supp.2d 1292, 1299 (S.D. Fla. 2007). During the preliminary approval process, "the court simply determines whether the proposed settlement falls within the range of possible approval." *Id.* at 1298 (citations omitted); *see also In re Checking Account Overdraft Litigation*, 275 F.R.D. 654, 661 (S.D. Fla. 2011) ("Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies

---

[3] Counsel have made an adequate showing on the record of their qualifications and experience in a manner that satisfies the requirements of Rule 23(g)(1). *See* Zimmermann Decl. (doc. 84, Exh. 6), ¶¶ 12-16; McFerrin Decl. (doc. 84, Exh. 7), ¶¶ 12-14 & n.1.

and the settlement falls within the range of reason.") (citation omitted).  If so, then the approving judge proceeds "to communicate the proposed settlement to the class, review and approve the proposed form of notice to the class, and to authorize the manner and form of dissemination of the notice."  *Figueroa*, 517 F. Supp.2d at 1299.

### A. Terms of Settlement.

As noted, the settlement contemplates that class members will receive cash and gift cards, with defendants also contributing limited additional funds for notice and claims administration.  The cash component of the settlement would entail defendants making a payment of $463,349.50 to be distributed on a *pro rata* basis to those class members who submit timely claims, with such *pro rata* share not to exceed $333.33 per compensable fax.  Before distribution, this gross settlement fund will be reduced by the following amounts: (i) a deduction for notice and claims administration costs in excess of $10,000; (ii) a deduction for class counsel's attorney's fees and litigation expenses, up to a maximum of one-third of the gross settlement fund less administration costs; and (iii) a deduction for an incentive award to the class representative, Family Medicine, of up to $10,000.  The gift card component of the settlement would involve defendants providing each class member submitting a claim (irrespective of the number of compensable faxes) with a single $10.00 gift card valid toward the purchase of certain fragrances or perfume brands at any Perfumania, Inc. retail store.  And finally, defendants would make a separate $10,000 payment toward notice and claims administration costs, with the remaining such costs (estimated at $15,000) to be deducted from the gross settlement fund.

Because of uncertainty over the number of claims, it is impossible to ascertain with precision what the *pro rata* payout per fax will be.  Although calculations may be made to reach a ballpark estimate, the results vary widely depending on assumptions concerning class participation rate and the total number of compensable faxes for which valid claims are submitted.[4]  What is clear, however, is that within any reasonable range of assumptions, the *pro*

---

[4] As a hypothetical exercise, suppose that 30% of the conditionally certified class of approximately 6,500 persons or entities files a claim.  Suppose further that participating class members received, on average, two compensable faxes (just as class representative Family Medicine did).  Suppose further that attorney's fees, litigation expenses and deductions for claims administration costs consume one-third of the total settlement fund.  In that event, the *pro rata* share per compensable fax would be equal to $79.21 (or ($463,349.50 x 2/3) divided by (6,500 x .3 x 2)).  The higher the participation rate by the settlement class and the larger the (Continued)

*rata* share will be far below both the $500 - $1,500 per violative fax that the TCPA provides as statutory damages, and the $333.33 cap to which the parties agreed. That is not necessarily a fatal defect. After all, it is far from certain that class members would have recovered anything had the claims proceeded to judgment, particularly in light of defendants' consent defense. Furthermore, if class members had prevailed on the merits and received judgment for the full amount of statutory damages, the resulting multimillion dollar award may have been unrecoverable, in light of plaintiff's information concerning defendants' profitability and financial condition. It also bears consideration that the proposed settlement brings an end to the litigation now, without a delay of years (and the accompanying expense of litigation) to obtain a judgment. And the information before the Court is that the parties (represented by experienced counsel) negotiated this settlement at arm's length over a period of months, with the assistance of a qualified mediator. All of these factors counsel in favor of a conclusion that the settlement terms fall within the range of reason. *See, e.g., Nelson v. Mead Johnson & Johnson Co.*, 484 Fed.Appx. 429, 434 (11th Cir. July 20, 2012) ("In determining whether the class action settlement is fair, reasonable, and adequate, the district court considers these factors: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.").

The Court makes no final determination at this time as to the fairness, reasonableness and adequacy of the settlement. Indeed, it would be premature and inappropriate to do so without having first given notice and an opportunity to object to all members of the settlement class. Nothing herein forecloses or pretermits any class member's ability to object to the settlement as unfair, unreasonable or inadequate; to the contrary, any such objections will be scrutinized closely before any ruling on the issue of final approval is made. What the Court does conclude

---

average number of compensable faxes per participating class member, the greater the denominator will be and, hence, the smaller the *pro rata* share. Thus, if 50% of the class submitted claims and the average number of compensable faxes was four, then the *pro rata* share would drop to $23.76 (or ($463,349.50 x 2/3) divided by (6,500 x .5 x 4)).

at this time is that the terms of the proposed settlement fall within the range of possible approval, thereby warranting preliminary approval.

### B. Notice.

Prior to final approval of a class action settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Rule 23(e)(1), Fed.R.Civ.P. Because the settlement class has been conditionally certified pursuant to Rule 23(b)(3), the rules also require that "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Rule 23(c)(2)(B), Fed.R.Civ.P. The notice requirement, which is derived from Rule 23 and the Due Process Clause, applies to both the content of the notice and the manner of its distribution. *See Adams v. Southern Farm Bureau Life Ins. Co.*, 493 F.3d 1276, 1285-86 (11th Cir. 2007) (explaining that class actions "are subject to the requirements of due process" and that, in determining whether class notice satisfies such requirements, one must look to both "the language of the notices and the manner of their distribution") (citation omitted); *In re Nissan Motor Corp. Antitrust Litigation*, 552 F.2d 1088, 1103 (5th Cir. 1977) (to comport with due process, "it is not only necessary that the notice reach the parties affected but that it convey the required information") (citations omitted).

In terms of content, Rule 23 dictates that the notice transmitted to class members "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Rule 23(c)(2)(B), Fed.R.Civ.P. Additionally, due process requires that the notice adequately describe class members' substantive claims and "must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment." *Adams*, 493 F.3d at 1286 (citation omitted).

Plaintiff has submitted a proposed form of notice as Exhibit 4 to its Memorandum Brief (doc. 84) in support of the motion for preliminary approval of settlement. The proposed notice includes the following critical disclosures, all in plain, easy-to-understand language: (i) the recipient is receiving notice because records show that it may have received an unsolicited fax

advertisement from defendants; (ii) the lawsuit involves claims under the TCPA for unsolicited fax advertisements promoting defendants' products without prior consent or an established relationship; (iii) the precise class definition; (iv) the names and contact information of class counsel; (v) the terms of settlement; (vi) an explanation that the recipient's share of settlement proceeds depends on the number of claims, along with a low-end hypothetical calculation under which class members would receive approximately $15.00 per fax; (vii) a detailed description of each class member's options, including the right to submit a claim form to receive settlement funds, the right to exclude oneself from the settlement by submitting a notice of exclusion, the right to object in a specified manner, and the option of doing nothing and remaining bound by the settlement without receiving compensation; (viii) a clear statement that if the recipient remained in the class, and the settlement were approved, then he or she would release all TCPA-related claims against defendants; and (ix) the date, time and location of the final approval hearing, and the right of each class member and/or his/her attorneys to attend and be heard. (Doc. 84, Exh. 4.)  After careful examination of the proposed form of notice, the Court is satisfied that its content comports with both Rule 23(c)(2)(B) and due process requirements.[5]

---

[5] Nonetheless, several corrections to the proposed form of notice are necessary.  On page 2, the notice indicates as follows: "If you do not wish to participate in the Settlement, you may exclude yourself from the Settlement by sending (via US Mail) a letter of notice of your intent to be excluded from the settlement to the Settlement Class Administrator, RG2 Claims Administration LLC."  (Doc. 84, Exh. 4, § V(2).)  Nowhere in that paragraph – or anywhere else in the proposed notice, for that matter – is a mailing address for RG2 Claims Administration listed.  Needless to say, it would be difficult for class members desiring to opt out to send a notice of exclusion "via US Mail" to a claims administrator for which no mailing address is provided.  (To be sure, the claims administrator's address is set forth on the claim form; however, it is unreasonable to expect class members who do not intend to file a claim to scrutinize a claim form to locate an address to which they must transmit notice of exclusion.)  This defect must be corrected.  Furthermore, in four different places, the proposed form of notice identifies the courthouse where pleadings are on file, where objections should be submitted, and where the final hearing will be held as the Hugo L. Black United States Courthouse in Birmingham, Alabama.  (*See* doc. 84, Exh. 4, §§ V(3), VI, VII, VIII.)  This is incorrect.  This action is not pending in the Northern District of Alabama, and the Hugo L. Black United States Courthouse has no nexus to this action.  Revisions must be made to identify the correct courthouse (name, address, and city) where this action is actually pending.  Finally, the Court observes that the proposed claims administrator has represented in court filings that "RG/2 Claims will also maintain a toll-free phone number for class members to call with any questions they may have concerning the settlement." (Wickersham Decl. (doc. 84, Exh. 3), ¶ 6(e).)  As things stand, however, such a gesture will not benefit class members because no reference to
(Continued)

As for the method of notice, again, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Rule 23(c)(2)(B), Fed.R.Civ.P. Plaintiff explains that proposed claims administrator RG/2 Claims Administration LLC will transmit class notice and claim forms to the last known fax number of each potential class member. (Wickersham Decl. (doc. 84, Exh. E), ¶ 6(a).) If RG/2 Claims' facsimile transmissions to a given class member fail on two occasions, then RG/2 Claims will mail the documents to that class member at the last known address provided by defendants, after running each such address through the U.S. Postal Service's National Change of Address database. (*Id.*, ¶ 6(b).) For any mailed notices that may be returned as undeliverable, RG/2 Claims will follow up by performing additional research using a commercially available address locator service, and will re-send the notice and claim forms to that class member at the best available address obtained through those efforts. (*Id.*, ¶ 6(b) (second subparagraph (b)).) As to class members who do not respond to the class notice within 21 days, RG/2 Claims will retransmit the class notice and claim form via facsimile. (*Id.*, ¶ 6(c).) RG/2 Claims will also create and maintain a toll-free telephone line to which class members may direct questions, and a website that will allow class members to search and review relevant settlement documents, provide access to a database showing how many facsimiles defendants sent to each fax number during the class period, and allow for electronic claims submission. (*Id.*, ¶ 6(d).) RG/2 Claims proposes to provide all these notice and claims administration services in this case at a cost of just under $25,000. (*Id.*, ¶ 7.)[6]

The Court is preliminarily satisfied that the proposed notice constitutes the best notice practicable under the circumstances and that it comports with Rule 23 and due process. Notice by facsimile transmission, which other federal courts have approved in TCPA class action settlements, appears particularly appropriate here, given that (i) all class members, by definition,

---

such a toll-free hotline is found in the proposed notice. Section VIII of the proposed form of notice must be supplemented with that important information.

[6] In its memorandum of law, plaintiff alludes to providing "electronic mail notice" to class members. (Doc. 84, at 26.) This appears to be a typographical error. Review of plaintiff's filings reveals that notice is contemplated to be achieved by facsimile and U.S. Mail alone, not by electronic mail transmission.

received facsimile transmissions from defendants during the relevant period; (ii) defendants have maintained records showing the facsimile numbers to which such transmissions were sent; and (iii) it can be reasonably expected that businesses and individuals change their facsimile numbers infrequently.  Thus, the vast majority of class members should be readily reachable via those same fax numbers to which the offending faxes giving rise to their claims were sent. Presumably, as to most class members for whom their fax numbers have changed in the interim, the settlement administrator's efforts to send faxed notice will result in failed transmissions, thus prompting the administrator to locate valid mailing addresses for them.  The Court perceives no obvious flaws in this notice plan; therefore, the Motion for Preliminary Approval is **granted** as to both the manner and content of notice.[7]

### IV. Conclusion and Establishment of Deadlines.

For all of the foregoing reasons, it is **ordered** as follows:

1. Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement and Certification of Settlement Class (doc. 83) is **granted**, as set out below;

2. The following class is **conditionally certified** solely for the purpose of settlement pursuant to Rules 23(a) and 23(b)(3):

   All Persons with fax numbers who, between January 1, 2011 through and including the date of entry of the Preliminary Approval Order, received any successful transmission of an unsolicited fax from Defendants advertising Defendants' products and/or services.

3. The Court **preliminarily appoints** plaintiff, Family Medicine Pharmacy LLC, as class representative of the settlement class;

---

[7] That said, final approval of the manner of notice must await receipt of information regarding the results of class counsel's notification efforts.  And, of course, nothing herein forecloses or prevents any class member from objecting at the fairness hearing that notice was inadequate as to either content or manner.  Such objections will be addressed on a case-by-case basis at the hearing.  Similarly, the Court makes no determination as to whether due process requirements are satisfied with respect to any class member who may not receive fax transmissions and for whom the claims administrator is unable to determine a current mailing address. *See, e.g., Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012) ("Where certain class members' names and addresses cannot be determined with reasonable efforts, notice by publication is generally considered adequate.").  The parties here have not provided for notice by publication.

4.     The Court **preliminarily appoints** as settlement class counsel James H. McFerrin, Esq. of McFerrin Law Firm LLC in Birmingham, Alabama, and Diandra S. Debrosse Zimmerman, Esq. of Zarzaur Mujumdar & Debrosse in Birmingham, Alabama;

5.     RG/2 Claims Administration LLC is **appointed** as settlement administrator. In this capacity, RG/2 is **ordered** to establish an escrow account in the name of *Family Medicine Pharmacy LLC v. Perfumania Holdings, Inc., et al., Settlement Account* at Huntingdon Bank, which account shall be held in *custodia legis* and remain subject to this Court's jurisdiction;

6.     Defendants are **ordered** to deposit into said escrow account the sum of $24,691 (estimated notice and claims administration costs) not later than **December 28, 2016**, which funds (less $10,000) shall be deemed to have been paid toward the settlement amount;

7.     On or before **December 28, 2016**, defendants' counsel shall provide the settlement administrator with a list (the "Notice List") of persons and entities who were potential recipients of unsolicited fax advertisements transmitted by defendants during the class period, as indicated by defendants' fax software records. The Notice List shall include, where available, the number and dates of such fax transmissions believed to have been received by each such person or entity during the class period, as recorded by defendants' software;

8.     The settlement administrator shall give notice to class members in the form found at Exhibit B annexed to the Settlement Agreement, subject to the specific modifications directed by this Court in footnote 5 of this Order. The Court preliminarily determines that class counsel's proposed plan for class notice is the best notice practicable under the circumstances, and that it satisfies both Rule 23 and due process requirements;

9.     By no later than **January 25, 2017**, the settlement administrator shall transmit the notice described in paragraph 8, *supra*, and a claim form substantially in the form found at Exhibit A annexed to the settlement agreement to all settlement class

members.[8]  Transmission shall be via facsimile and/or U.S. mail, as set forth in this Order and the Settlement Agreement;

10. Within 21 days after notice is first sent by facsimile, the settlement administrator shall send the class notice and claim form by facsimile to each class member who has not yet submitted a claim form or otherwise responded to the class notice by that date.  Should the initial transmission fail, the settlement administrator shall make at least two attempts to transmit such supplemental notice.  The settlement administrator shall also create and maintain a website that will (i) allow for electronic submission of claim forms, and (ii) contain copies of the class notice, the claim form, this Order, the Settlement Agreement (excluding exhibits), the petition for attorney's fees, IRS form W-9, and the searchable database allowing class members to locate their fax number and ascertain the number and dates of faxes sent by defendants to them, according to defendants' records.  The settlement administrator must also maintain a toll-free telephone number for class members to call with any questions they may have concerning the settlement, and must conspicuously display that number and the availability of that hotline service to class members on the website, in the class notice, and on the claim form;

11. Plaintiff's counsel will cause to be published at www.zarzour.com copies of the class notice, the claim form, this Order, the Settlement Agreement (excluding exhibits), the petition for attorney's fees and IRS form W-9;

12. The Court preliminarily finds that the notice program complies with the requirements of due process and Rule 23(c)(2)(B);

---

[8] One substantive modification to the claim form is necessary.  In bold print in the final paragraph, the claim form directs class members as follows: "You should go to the settlement administrator's web-site [*sic*], search the list of fax numbers for your fax number, and review the number and date of faxes sent to you, if any." (Doc. 84, Exh. 1, at Exh. A.)  Nowhere in that paragraph is the specific URL of the "settlement administrator's website" identified, and the only website address recited on that entire page is not identified as that of the settlement administrator.  Accordingly, in the interests of clarity, Exhibit A must be revised to recite the specific website address for the "settlement administrator's web-site" in the last full paragraph of the claim form.

13. To effectuate the settlement, the Court establishes the following deadlines for the events set forth in the Settlement Agreement and directs the parties to incorporate such deadlines into the class notice and claim form:

    (a) Claim forms shall be returned by settlement class members to the settlement administrator online, by fax, by electronic mail, or by mail with a postmark on or before **March 31, 2017**. Claims not submitted by this deadline shall be barred;

    (b) Objections of settlement class members or any appearance of an attorney on behalf of a settlement class member shall be filed with the Clerk of Court and served by mail on plaintiff's counsel and defendants' counsel on or before **March 31, 2017**, or shall be barred;

    (c) All memoranda filed by any settlement class member in connection with objections must be filed with the Clerk of Court and served by mail on plaintiff's counsel and defendants' counsel on or before **March 31, 2017**, or shall be barred;

    (d) Requests by any settlement class member for exclusion from the class and to opt out of the settlement must be mailed to plaintiff's counsel and the settlement administrator on or before **March 31, 2017**, or shall be barred. A notice of intent to opt out of the settlement must include the following information, at a minimum: (a) the settlement class member's name, address, and the fax number at which it received one or more advertisements from defendants; and (b) a statement to the effect that the class member does not wish to participate in the settlement;

14. The settlement administrator shall file an affidavit attesting to the fact that notice was issued in accordance with the Settlement Agreement by **February 24, 2017**;

15. By no later than **April 14, 2017**, plaintiff's counsel or the settlement administrator shall file with the Clerk of Court and serve on defendants' counsel the opt-out list;

16. Defendants' counsel shall file proof of compliance with the notice requirements of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b), by no later than **April 21, 2017**;

17. On or before **April 21, 2017**, the settlement administrator shall file with the Clerk of Court a declaration detailing the number of claims, exclusions, and objections received, and the particulars thereof;

18. All papers in support of the settlement agreement shall be filed no later than **April 28, 2017**.  Any responses to objections shall be filed with the Clerk of Court on or before **April 28, 2017**.  Plaintiff's counsel shall file an attorney's fee petition no later than **April 28, 2017**.  Any objection to requests for approval/award of attorney's fees, class representative incentive payments or reimbursement of expenses may be made in writing filed no later than **May 12, 2017**, or orally at the final approval hearing;

19. Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the Court will hold a Final Approval Hearing in Courtroom 2A, United States Courthouse, Mobile, Alabama, on **May 30, 2017 at 2:00 p.m.**;

20. Pending the Final Judgment and Order, neither plaintiff nor any class member shall either directly, representatively, or in any other capacity, commence or prosecute any action or proceeding in any court or tribunal asserting any released claims against any released party unless such person or entity has opted out of the settlement class in this action in accordance with the terms of the Settlement Agreement or this Order; and

21. The Court may, for good cause, extend any deadlines set forth herein or continue the Final Approval Hearing without further direct notice to members of the settlement class who do not file timely objections to the proposed settlement.

DONE and ORDERED this 14th day of December, 2016.

                                            s/ WILLIAM H. STEELE
                                            CHIEF UNITED STATES DISTRICT JUDGE