IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
MOBILE DIVISION

| | |
|---|---|
| FAMILY MEDICINE PHARMACY LLC, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No: 1:15-CV-00563-WS-C ) |
| PERFUMANIA HOLDINGS, INC., et al., | ) ) |
| Defendants. | ) |

**MOTION AND INCORPORATED MEMORANDUM FOR AWARD
OF ATTORNEYS' FEES, EXPENSES AND INCENTIVE
PAYMENTS FOR CLASS REPRESENTATIVES**

Plaintiff, Family Medicine Pharmacy, LLC (hereinafter "Family Medicine") and Class Counsel, Diandra Debrosse Zimmermann (hereinafter "Debrosse) and James H. McFerrin (hereinafter "McFerrin"), hereby move this Court to enter an Order awarding the following from the proposed settlement amount: (a) attorneys' fees in the amount of One Hundred Thirty-Nine Thousand Four Dollars and Eighty-Three Cents ($139,004.83); (b) reimbursement of expenses incurred in this action in the amount of Six Hundred Fifty Eight Dollars and Seventy Three Cents ($658.73); and (c) incentive awards to Class representative Family Medicine Pharmacy LLC of Ten Thousand Five Hundred Dollars and Zero Cents ($10,000.00). As discussed more fully herein, the requested fees and expenses are well within the range of fees awarded in common fund class action cases such as this.

**I. PRELIMINARY STATEMENT**

Class Counsel prosecuted this action on a purely contingent fee basis. When this case was filed on November 3, 2015, a positive result was far from assured. Despite the risks of

failure, the extensive time it would take, and strong opposition, Plaintiff's counsel successfully prosecuted this matter, resulting in the proposed settlement before this Honorable Court. Due to Plaintiff's success, a settlement fund of $463,349.50 (hereinafter "Cash component") will be established from which Class members may claim their share, in addition to the provision of a discount program consisting of ten dollar gift cards to be distributed to all class members submitting valid claims. The class members will be able to use the gift cards toward the purchase of certain of Defendants' products.

As compensation for the considerable efforts advanced in this litigation, Class Counsel request that this Honorable Court approve an award of attorneys' fees in the amount of $139,004.8. This fee request equates to 30% of the funds held in the Cash component of the proposed settlement fund, and is less than the one-third attorney fee set forth in the notice which was properly issued to the Class.

The amount of fees requested is justified by, among other reasons, the common fund created, as well as the substantial risks involved in prosecuting this litigation, the complexity of the litigation, the substantial amount of time expended in prosecuting this action, and the risks associated with the handling of this matter on a contingency fee basis.

The fairness and reasonableness of the requested fee award is further confirmed by an examination of the factors traditionally employed by courts considering fee requests in class action common-fund cases, like the present matter. When viewed as a percentage of the total recovery, the requested fee is well within the range of reasonableness for cases of this nature. Indeed, courts often award percentage fees well in excess of the percentage requested here. As discussed below, the percentage-of-recovery method (rather than the lodestar method) is the preferred approach in analyzing class action fee applications in the Eleventh Circuit. Indeed, the

percentage-of-recovery method is now widely perceived by courts across the country as the most sensible and fair approach to calculating attorneys' fees because that is how counsel are compensated for securing a recovery on a contingent basis in the private legal services marketplace.

This action was hard fought and, at the same time, prosecuted effectively and efficiently with a minimum of waste and duplication. Counsel prevailed in creating a common fund and obtaining valuable relief for the Class. The hours expended by Plaintiffs' counsel were substantial, approaching a combined total of approximately 430[1] attorney hours, but they were also reasonable and necessary. Excellent results were achieved, particularly in light of the substantial opposition and risks involved.

## II. FACTUAL BACKGROUND

In 2009, the Junk Fax Prevention Act, 47 U.S.C. 227, et seq., (hereinafter "The Act"), was signed into law and served to amend the Telephone Consumer Protection Act of 1991 to prohibit fax transmissions containing unsolicited advertisement. Specifically, the Act makes it unlawful for Defendants to use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to another telephone facsimile machine in the United States.

An unsolicited advertisement is "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission." 47 U.S.C. §227(a)(5).

The Act makes it unlawful for Defendants, Perfumania Holdings, Inc., Perfumania, Inc., and Quality King Fragrance, Inc. d/b/a Quality Fragrance Group, to use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to another telephone

---

[1] Counsel will also incur additional hours finalizing the implementation of this settlement, if the Court so approves, and traveling and participating in the final fairness hearing.

facsimile machine in the United States where said advertisement fails to provide the recipient with a cost-free mechanism to opt out of receiving said transmissions in the future. 47 U.S.C. §227(b)(1)(C)(iii).

The Act provides a private right of action to enforce its provisions. 47 U.S.C. §227(b)(3). Plaintiff Family Medicine, on behalf of itself and the Class, filed the present action on November 3, 2015 seeking statutory and other damages for violation of the TCPA.

After spirited litigation, including a pervasive battle over Defendants' Motion to Dismiss concerning the validity of Defendants' offer of judgment and its preclusive impact, the parties reached a mediated settlement on October 5, 2016 with the aid of mediator Bruce Rogers.

In light of the foregoing, the fee requested is reasonable and well within the range of those fee requests approved by both federal and Alabama courts in common fund cases.

### III. ARGUMENT

#### A. Plaintiff's Counsel are Entitled to Compensation Based on the Benefits Created by the Litigation.

The common fund doctrine is one of the earliest recognized exceptions to the "American Rule," which generally requires that litigants bear their own costs and attorneys' fees. Premised on the equitable powers of the court, the common fund doctrine allows a person who maintains a suit that results in the creation, preservation or increase of a benefit in which others have a common interest to be reimbursed for the litigation expenses incurred. *Central R.R. & Banking Co. v. Pettus,* 113 U.S. 116 (1885); *see also, Trustees v. Greenough*, 105 U.S. 527 (1882); *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161 (1939); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 973 (7th Cir. 1991).

Under this "equitable fund" doctrine, attorneys for the representative plaintiffs in litigation resulting in a recovery for a class may petition the court to be compensated for their

efforts. As explained by the United States Supreme Court in the *Boeing* case: "a litigant or a lawyer who recovers a common fund for the benefit of a person other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemery*, *supra.*, 444 U.S. at 478. See also *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 265, 271 (9th Cir. 1989); *Ex parte Horn*, 718 So. 2d 694, 702 (Ala. 1998) ("attorney's fees may be awarded where the plaintiff's efforts are unsuccessful in creating a fund out of which the fees may be paid, or when the efforts of the plaintiff's attorneys render a public service or result in a benefit to the general public in addition to serving the interests of the plaintiff").

### i. The Benefits Resulting from the Efforts of Plaintiff's Counsel Provide a Basis for an Award of Attorneys' Fees.

The efforts of Plaintiff's counsel led to the creation of the common fund consisting of a cash fund of $463,349.50 from which class members may claim their share, in addition to a discount program wherein class members will enjoy a ten dollar retail gift card to be used toward the purchase of one of Defendants' identified products. It is well established that where a representative party has made a "substantial contribution" to conferring a "benefit" upon an identifiable class, counsel for that party is entitled to an allowance of attorneys' fees relative to the benefit obtained. *See, e.g., Mills v. Electric*, *supra.*, 396 U.S. at 375; *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188 (6th Cir. 1974); *Ex parte Horn supra.*, 718 So. 2d at 702. The "substantial benefit" doctrine serves the goal of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts. *See Ramey*, 508 F.2d at 1995; *Generally, Boeing v. Van* Gemery, supra.; *Reiser v. Del Monte Properties Co.*, 605 F.2d 1135, 1139 (9th Cir. 1979).

In this case, there is no question that Plaintiff's counsel vigorously prosecuted this action, and through their efforts, the Class Members will have the right to receive cash from the common fund, and the complained of practice of the dissemination of unsolicited facsimiles by the Defendants is a thing of the past. Counsel's fee and expense request represents a more than reasonable portion of the overall value created for the Class.

### ii.     The Percentage Approach is the Most Appropriate Method for Testing the Appropriateness of the Fee Request.

The United States Supreme Court has consistently held that the percentage-of-recovery approach is an appropriate methodology for assessing plaintiffs' counsel's fees. *See, e.g., Sprague*, *supra*., 307 U.S. at 164-67; *Central R.R. & Banking*, *supra*., 113 U.S. at 123; *Greenough*, *supra*., 105 U.S. at 533.  The Supreme Court has stated that "under the 'common fund doctrine,' … a reasonable fee is based on a percentage of the fund bestowed on the class…" *Blum v. Stenson*, 465 U.S. 886, 900 n. 16 (1984).  That is, "the fee request must be looked at in terms of the percentage it represents of the total recovery." *In re Warner Communications Sec. Litig.*, 618 F.Supp. 735, 749 (S.D. N.Y. 1985) aff'd 798 F.2d 35 (2d Cir. 1986) (emphasis added).

Consistent with United States Supreme Court precedent, numerous courts of appeal and district courts across the county, including the Eleventh Circuit Court of Appeals, have noted the desirability and appropriateness of the percentage method.  Indeed, a vast majority of the circuits permit percentage awards and some circuits have gone further and have, in fact, mandated the use of the percentage method.  *See, e.g., Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768 (11th Cir. 1991) (mandating the use of the percentage of fund).

"Attorneys who represent a class, and achieve a benefit for the class members, are entitled to be compensated for their services." *Ressler v. Jacobson,* 149 F.R.D. 651, 653 (M.D.

Fla. 1992) (citing *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980)). When the parties to a class action reach a settlement agreement whereby a "common fund" is created for the benefit of the class, an award of attorneys' fees is governed by the common fund doctrine. *See e.g., Stahl v. MasTec, Inc.,* Case No. 8:05-cv-1265-T-27TGW, 2008 WL 2267469, at *1 (M.D. Fla. May 20, 2008). Under this doctrine, class counsel is entitled to a reasonable percentage of the class settlement fund, subject to Court approval. *Camden/Condo. Ass'n, Inc. v. Dunkle,* 946 F.2d 768, 773-74 (11th Cir. 1991). "The majority of common fund fee awards fall between 20% and 30% of the fund." *Id.* at 774. Thus, the "bench mark" percentage fee award is 25%, which "may be adjusted in accordance with the individual circumstances of each case." *Id.* at 775. In considering an adjustment, the Court should consider the following twelve "*Johnson* factors":

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and the length of the professional relationship with the client; and (12) awards in similar cases. *Id.* at 772 n.2 (citing *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974)).

### iii. The Requested Fee is Appropriate as a Reasonable Percentage of the Total Benefits Conferred.

In the Eleventh Circuit, the preferred approach to calculating attorneys' fees in a common benefit case is as a percentage-of-recovery method, as it is consistent with practice in the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients, it provides a strong incentive to plaintiff's counsel to obtain the maximum recovery, and it reduces the burden of the Court to review and calculate individual attorney hours and rates. *Camden, supra.*; *Garst v. Franklin Life Ins. Co.*, 1999 U.S. Dist. LEXIS 22666 (N.D. Ala. June 25, 1999).

The Eleventh Circuit, and Courts within the Eleventh Circuit, have indicated that the benchmark for contingency fees in class action cases are typically in the range of 25% to 30%, although an upper limit of 50% of the fund may be stated as a general rule. *Waters v. Internat'l Recious Metals Corp.*, 190 F.3d 1291, 1294-95 (11th Cir. 1999); *Camden, supra.*,; *Oakes v. Blue Cross & Blue Shield of Fla., Inc.*, 2016 U.S. Dist. LEXIS 147252, at *16 (S.D. Fla., October 21, 2016); *Mosser v. TD Bank, N.A.* (In Re Checking Account Overdraft Litig., MDL No. 2036), 2013 U.S. Dist. LEXIS 187627 (S.D. Fla., Mar. 18, 2013).

In considering fee requests in common fund cases which include injunctive or other non-cash relief as a component of the recovery, courts commonly include the value of the non-cash relief in evaluating the fee request. *See, e.g., Abbey v. Lloyd's of London*, 975 F.Supp. 802, 807 (E.D. Va. 1997) ("a fee award may be predicated on the grant of either monetary or equitable relief"); *Arenson v. Board of Trade*, 372 F.Supp. 1349 (N.D. Ill. 1974); *In re Domestic Air Transportation Antitrust Litig.*, 148 F.R.D. 297 (N.D. Ga. 1993) (adopting constructive common fund theory for fees in non-monetary benefit situations); *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240 (S.D. Ohio 1975) (determining percentage for fees based on total estimated present value of settlement, including injunctive relief).

Here, the gift cards constitute an additional $5,370.00 in value to class members (537 valid claims submitted multiplied by $10.00 equals $5,370.00).

Applying all those considerations, the requested fee in this case is reasonable and appropriate. Here, the Class will obtain monetary funds, a usable discount on future purchases, and the complained of practice is no more. The success achieved, coupled with the time within which the result issued, justified the percentage fee requested. Thus, Counsel's fee request is very reasonable.

      **iv.**    **Consideration of the Factors Traditionally Used in Determining Fee Awards also Supports the Requested Fee.**

The present fee request is also supported by consideration of the factors for determining a reasonable fee identified in *Camden*, supra., (citing factors originally set forth in *Johnson v. Georgia Highway Express*, 488 F.2d 714, 717-19 (5th Cir. 1974)):

(1) the time and labor required;

(2) the novelty and difficulty of the questions involved;

(3) the skill requisite to perform the legal service properly;

(4) the preclusion of other employment by the attorney due to acceptance of the case;

(5) the customary fee;

(6) whether the fee is fixed or contingent;

(7) time limitations imposed by the client or the circumstances;

(8) the amount involved and the results obtained;

(9) the experience, reputation, and ability of the attorneys;

(10) the undesirability of the case;

(11) the nature and the length of the professional relationship with the client; and

(12) awards in similar cases.

Depending on the specific facts of the case, a trial judge may totally ignore some factors and give others different relative weights. *Id.*; *see also Ramos v. Lamm*, 713 F.2d 546, 552 (10th Cir. 1983). In a common fund case, the amount involved and results obtained are the "decisive factor." *Brown v. Phillips Petroleum*, 838 F.2d 451, 456 (10th Cir.1988). *See also, Peebles v. Miley,* 439 So. 2d 137, 140-41 (Ala. 1983) (establishing general guidelines for courts in determining reasonable attorney fees). A review of these factors reveals that the requested fee is reasonable.

### a. Time and Labor Expended

Class Counsel expended in excess of 430 hours to date in this case, and obtained significant relief for Plaintiff and the Class members. Counsel investigated claims of the Class members, researched multiple issues that were presented to the Court or were argued between counsel, drafted the Complaint, served informal discovery requests, reviewed detailed informal discovery, participated in protracted motion practice including the drafting of Plaintiff's Amended Complaint, Plaintiff's Preliminary Motion for Class Certification, responding to Defendants motions to dismiss and supporting memorandum briefs, prepared for and participated in settlement negotiations, and negotiated the complex legal issues presented in this matter. Thus, hours spent by counsel and staff in this case on a contingent basis justify the requested fee and reimbursement of expenses.

### b. Novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly

The complexity of the issues in this case required a high degree of legal skill, common sense, and practical experience in the prosecution of this class action matter. Defendants are represented by attorneys with extensive experience in similar litigation.

To prosecute the claims of the class – against defendants represented by highly capable counsel[2] – it was necessary to have lawyers with substantial experience in class actions and other complex litigation. Their work in this case confirms that Plaintiff's counsel possesses the skill necessary to prosecute the case effectively. The unique and changing legal precedents espoused by the U.S. Supreme Court, and the varying interpretations of such by the various District Courts involved in "junk fax" class actions rendered this matter one in which the legal expertise and

---

[2] The quality of the opposition is a relevant consideration. *See, e.g., Ressler v. Jacobson*, 149 F.R.D. 651m, 654 (M.D. Fla. 1992).

experience of class counsel was required. Unsettled legal issues researched and argued before the court, or via mediation, and between counsel included, for example, whether a fax recipient's established business relationship ("EBR") with a third party mutual to the defendant is sufficient to create an EBR with the defendant, whether an unaccepted Rule 68 offer moots the individual claim or potential class representative status, the impact of the U.S. Supreme Court's decision in *Spokeo, Inc. v. Robins*, *Inc.* to the present matter, and other issues.

The undersigned's work in this case confirms that they possessed the skill necessary to prosecute the case effectively, and this factor supports Plaintiff's counsel assertion that the requested fee is warranted in this matter.

### c. Preclusion of other employment by the attorney due to acceptance of the case

Plaintiff's counsel James H. McFerrin has limited the size and scope of his practice since the birth of his son, so his total available time to devote to the practice of law is limited. McFerrin continued to represent long-standing defense clients, which routinely consumed a sizable portion of his time – thus limiting his available time to accept contingent fee matters such as the present case. Handling the present matter consumed a substantial portion of McFerrin's available time for contingent fee matters and precluded him from accepting other contingent fee cases.

The analysis of this factor supports the award of the requested fee.

### d. The customary fee and contingent nature of the fee

Suffice it to say, the customary fee in a non-class contingency case typically falls between one-third and fifty percent of the settlement or recovery amount. As noted by the declaration of McFerrin, his customary fee in a contingent fee case is 40%, which is also the

agreement with class representative Family Medicine Pharmacy, L.L.C. in this matter. As noted by the declaration of Debrosse, her customary fees in non-class contingency cases is 33-45%, depending on the complexity of the matter and the individual circumstances of the client.

Although "[t]here is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee," *In re Sunbeam: Securities Litigation*, 176 F. Supp. 2d at 1333 (quoting *Camden I Condo Ass'n v. Dunkle*, 946 F.2d 768, 771, 774 (11th Cir. 1991), an award of one-third (⅓) of the common fund is consistent with the trend in this Circuit. *See, e.g.*, *Comeens v. HM Operating, Inc.*, 2016 WL 4398412, slip op., p. 4 (N.D. Ala. Aug. 18, 2016) (approving 33⅓ percent); *Guzman v. The Consumer Law Grp.*, 2016 WL 2755915, slip op., p. 4 (S.D. Ga. May 11, 2016) (same); *Diakos v. HSS Sys., LLC*, 2016 WL 3702698, slip op., p. 6 (S.D. Fla. Feb. 5, 2016)(same); *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F.Supp.2d 1185 (S.D.Fla.2006) (awarding fees of 31⅓ % of $1.06 billion); *In re: Terazosin Hydrochloride Antitrust Litigation,* 99-1317-MDL-Seitz (S.D. Fla. April 19, 2005) (awarding fees of 33⅓ % of settlement of over $30 million); *In re: Managed Care Litig. v. Aetna*, MDL No. 1334, 2003 WL 22850070 (S.D.Fla. Oct. 24, 2003) (awarding fees and costs of 35.5% of settlement of $100 million); Gutter v. E.I. Dupont De Nemours & Co., 95-2152-Civ-Gold (S.D.Fla. May 30, 2003) (awarding fees of 33⅓ % of settlement of $77.5 million); Waters v. Int'l Precious Metals Corp., 190 F.3d 1291 (11th Cir.1999) (affirming fee award of 33 1/3 % of settlement of $40 million.

Here, counsel requests an attorney fee award of 30%, which is actually less than the one-third amount specified in the notice issued to the Class.

The analysis of the customary and contingent nature of the representation in this instance supports the award of the requested fee.

### e. Whether the fee is fixed or contingent

Various courts recognize that the contingent fee risk is an important factor in determining the fee award. "A contingency fee arrangement often justifies an increase in the award of attorney's fees." *In re Sunbeam*, 176 F. Supp. 2d at 1335 (quoting *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988), aff'd, 899 F.2d 21 (11th Cir. 1990)); *see also In re Continental Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992) (holding that when a common fund case has been prosecuted on a contingent basis, plaintiffs' counsel must be compensated adequately for the risk of non-payment); *Ressler,* 149 F.R.D. at 656 ("Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award."); *Walters v. Atlanta*, 652 F. Supp. 755, 759 (N.D. Ga. 1985), *modifie*d, 803 F.2d 1135 (11th Cir.); *York v. Alabama State Bd. of Education*, 631 F. Supp. 78, 86 (M.D. Ala. 1986).

In this matter, Class counsel accepted and prosecuted this cause on a contingent basis. The risk assumed is a driving factor in determining a reasonable fee. In *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 548 (S.D.Fla.1988), *aff'd*, 899 F.2d 21 (11th Cir.1990), the court noted:

> Generally, the contingency retainment must be promoted to assure representation when a person could not otherwise afford the services of a lawyer.... A contingency fee arrangement often justifies an increase in the award of attorneys' fees. This rule helps assure that the contingency fee arrangement endures. If this "bonus" methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing. (citations omitted). See also *In re Sunbeam*, 176 F.Supp.2d at 1335; Ressler v. Jacobson, 149 F.R.D. 651, 656-57 (M.D.Fla.1992) ("Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award.... In evaluating [the contingent fee] factor the Court will not ignore the pecuniary loss suffered by plaintiff's counsel in other actions where counsel received little or no fee."). These factors weigh in favor of awarding Class Counsel 30% of the fund. Class Counsel have received no compensation during the course of this litigation and have also incurred significant expenses in litigating on behalf of the Class, none of which would have been recovered if the case had not been successfully

concluded. From the time Class Counsel filed suit, there existed a real possibility that they would achieve no recovery for the Class and hence no compensation. Class Counsel's investment of time and expenses has always been at risk and wholly contingent on the result they achieved. Although Class Counsel have successfully concluded the litigation, this result was not foreseeable at the outset. The relevant risks must be evaluated from the standpoint of Plaintiffs' counsel as of the time they commenced the suit and not retroactively with the benefit of hindsight. The financial risks borne by Class Counsel fully support the appropriateness of the fee requested.

Counsel's commitment to pursuing this claim on a contingent basis, in short, weighs in favor of approval of the requested fee and expenses.

### f. The amount involved and the results obtained

In awarding attorneys' fees in a common fund class action, the amount involved and the results obtained are decisive factors. *Brown v. Phillips Petroleum*, *supra.*, 838 F.2d at 456. In *Brown*, the Tenth Circuit explained that this factor may be given greater weight – particularly in comparison with the time and labor required – when "the recovery was highly contingent and that the efforts of counsel were instrumental in realizing recovery on behalf of the class." *Id*. Both conditions apply here.

This case clearly presented substantial risks, making the prospect of a recovery, and thus of an award of fees, highly contingent. As the Court is aware, the Defendants' financial position is far from healthy and the ability to obtain compensation for class members in light of the real possibility of receiving little or nothing is of import. Class Counsel had absolutely no assurance of success. Likewise, there can be no doubt that Class Counsel were instrumental in obtaining the recovery. Here, the amount of risk involved and the results obtained are a decisive factor, entitled to great weight in awarding attorneys' fees.

The stakes in this case were high. Despite the complexity of the factual and legal issues involved, and the numerous obstacles to recovery, Class Counsel's efforts in this litigation and

the mediation resulted in the Class Settlement Agreement providing cash fund of $463,349.50, $10.00 gift cards to each class member submitting a valid claim and cessation of the unwanted faxes. This factor weighs heavily in favor of approval of the requested fee.

### g. Experience, Reputation and Ability of the attorneys.

Plaintiff's counsel has substantial experience in prosecuting class actions and other complex litigation. *See* affidavits of Debrosse ("Debrosse Affidavit") and McFerrin, filed herein ("McFerrin Affidavit"), in Exhibits 1 and 2. Plaintiff's Counsel respectfully submits that the result reflects their experience and ability, and supports an approval of the requested fee.

### h. The nature and the length of the professional relationship with the client

Suffice to say, Counsel enjoyed a long-term relationship with the class representative and anticipates a continuation of the relationship. This factor is neutral.

### i. Awards in similar cases

It appears that there is a legitimate trend in this Circuit of awarding class counsel of one-third (⅓) of the common fund as an attorney fee. *See, e.g.*, *Comeens v. HM Operating, Inc.*, 2016 WL 4398412, slip op., p. 4 (N.D. Ala. Aug. 18, 2016) (Approving 33⅓ percent); *Guzman v. The Consumer Law Gr*p., 2016 WL 2755915, slip op., p. 4 (S.D. Ga. May 11, 2016)(same); *Diakos v. HSS Sys., LLC*, 2016 WL 3702698, slip op., p. 6 (S.D. Fla. Feb. 5, 2016)(same); *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F.Supp.2d 1185 (S.D.Fla.2006) (awarding fees of 31 1/3 % of $1.06 billion); *In re: Terazosin Hydrochloride Antitrust Litigation*, 99-1317-MDL-Seitz (S.D. Fla. April 19, 2005) (awarding fees of 33⅓ % of settlement of over $30 million); *In re: Managed Care Litig. v. A*etna, MDL No. 1334, 2003 WL 22850070 (S.D.Fla. Oct. 24, 2003) (awarding fees and costs of 35.5% of settlement of $100 million); *Gutter v. E.I. Dupont De Nemours & Co.*, 95-2152-Civ-Gold (S.D.Fla. May 30, 2003) (awarding fees of 33⅓ % of

settlement of $77.5 million); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir.1999) (affirming fee award of 33 1/3 % of settlement of $40 million. The analysis of this factor supports the award of the requested fee.

### j. Reaction of the Class

In addition to the *Johnson* factors, the likely most important factor is one of simple common-sense: The reaction of class members to the proposed attorney fee request. Here, class members were advised by the notice issued in accord with the Court's previous Order that the attorney fees would be as much as one-third of the settlement fund. In spite of the clear notice of a potential one-third attorney fee, not one member of the Class has objected. The reaction of the class certainly weighs heavily in favor of the requested attorney fee award.

### k. The Reasonable Expenses Incurred

During this litigation, Plaintiffs' counsel have advanced and borne the expenses that were necessary to prosecute this complex tax litigation effectively for the benefit of the Plaintiffs and the Class.  The expenses total $658.73 (Debrosse and McFerrin Affidavits in Exhibits 1 and 2). These expenses were reasonably and necessarily incurred in order to effectively prosecute this complex case and to refute Defendants' arguments.  *Id.*

The award of expenses to counsel who create a common fund is appropriate.  *See also, In re Catfish Antitrust Litig.*, 939 F.Supp. 493 (N.D. Miss. 1996) (awarding costs and expenses in addition to the percentage fee); *In re SmithKline Beckman*, 751 F.Supp. 525, 534 (E.D. Pa. 1990); *Spicer v. Chicago Board of Options*, 844 F.Supp. 1226 (N.D. Ill. 1993).  Thus, reimbursement of expenses in the amount requested is appropriate.

### B. The Award of an Incentive Award to Family Medicine is Warranted

Incentive awards are common in class action litigation where, as here, a common fund has been created for the benefit of the class. *In re Catfish Antitrust Litig.*, *supra.*, 939 F.Supp. at 503-04.  Incentive awards compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class litigation. *Allpattah Servs v. Exxon* Corp., 454 F. Supp. 2d 1185, 1218-1219 (S.D. Fla., 2006); *citing* In re *Southern Ohio Corr. Facility*, 175 F.R.D. 270, 272-76 (S.D. Ohio 1997).  Incentive awards serve an important function, particularly where the named plaintiffs participated in the litigation. *Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317 (S.D. N.Y. 2005).

This action would not have been possible but for the willing participation of the Class Representative.  Family Medicine actively participated in the case by participating in litigation strategy, expending time and energy providing necessary information and materials, and remaining apprised and vigilant throughout the litigation.

Without the only named plaintiff in this matter, the national class would not enjoy the benefits of this class settlement.  Accordingly, as Family Medicine participated and achieved a substantial benefit for the class under the circumstances, Family Medicine is entitled to additional compensation beyond what they will receive under the terms of the settlement.  Class Counsel request that an appropriate amount to compensate the representative would be Ten Thousand Dollars ($10,000.00).

As noted previously, class members were advised of the potential $10,000.00 class incentive award to be provided to Family Medicine, but none of the thousands of Class members who received notice submitted any objection. The lack of an objection weighs heavily in favor of the requested award.

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs' counsel respectfully request that the Court enter an Order:

1. Granting the motion for an award of attorneys' fees in the amount of $139,004.83, to be paid from the Escrow Account created and maintained in this matter;

2. Granting the request for reimbursement of expenses in the amount of $658.73, to be paid from the Escrow Account created and maintained in this matter;

3. Granting an award of $10,000.00 as an incentive payment to Plaintiff Family Medicine LLC as the Class Representative, to be paid from the Escrow Account created and maintained in this matter;

4. Granting all further and just relief.

Respectfully submitted this, the 26th day of April, 2017.

/s/Diandra S. Debrosse Zimmermann
Diandra S. Debrosse Zimmermann
ASB-2956-7N6D

**OF COUNSEL:**
**ZARZAUR MUJUMDAR & DEBROSSE**
2332 2nd Avenue North
Birmingham, Alabama 35203
T: 205-983-7985
F: 888-505-0523
fuli@zarzaur.com

/s/James H. McFerrin
James H. McFerrin
ASB-2945-M72J

**OF COUNSEL:**
**McFERRIN LAW FIRM, LLC**
265 Riverchase Parkway East
Suite 106
Birmingham, Al 35244
T: (205) 870-5704
F: (205) 985-5093
jhmcferrin@bellsouth.net

## CERTIFICATE OF SERVICE

      I hereby certify that on April 26, 2017, the foregoing was filed with the Clerk of the Court using the CM/ECF system, which sent notifications of such filing to all counsel of record:

Fred M. Haston, III
Clyde Whitaker Steineker
**Bradley Arant Boult Cummings LLP**
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203
T: 205.521.8000
F: 205.521.8800
thaston@babc.com
wsteineker@babc.com

Anthony Viola
Kevin McGinty
Andre Cizmarik (admitted *pro hac vice*)
**Mintz Levin Cohn Ferris Glovsky and Popeo, P.C**.
Chrysler Center
666 Third Avenue
New York, New York 10017
T: 212.935.3000
F: 212.983.3115
ajviola@mintz.com
KMcGinty@mintz.com
akcizmarik@mintz.com

*Attorneys for Defendants*
*Perfumania Holdings Inc. d/b/a Quality Fragrance Group,*
*Perfumania, Inc. and Quality King Fragrance, Inc.*

                                        /s/Diandra S. Debrosse Zimmermann
                                        OF COUNSEL